No. 26-1804, 26-1805

In the United States Court of Appeals for the Federal Circuit

————————————

STATE OF OREGON, STATE OF WASHINGTON,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, DEPARTMENT OF HOMELAND SECURITY, MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, UNITED STATES,

*Defendants-Appellants.*

(*For Continuation of Caption See Inside Cover*)

————————————

ON APPEAL FROM THE UNITED STATES COURT OF INTERNATIONAL TRADE IN NOS. 1:26-CV-01472-3JP AND 1:26-CV-01606-3JP

————————————

**BRIEF OF ADVANCING AMERICAN FREEDOM, INC.; INDEPENDENT INSTITUTE; CENTER FOR FREEDOM AND PROSPERITY; RIO GRANDE FOUNDATION; RICHARD EPSTEIN; JONATHAN BEAN, RESEARCH FELLOW, INDEPENDENT INSTITUTE, PROFESSOR OF HISTORY, SOUTHERN ILLINOIS UNIVERSITY; PETER T. CALCAGNO, PH.D., PROFESSOR OF ECONOMICS, COLLEGE OF CHARLESTON, DIRECTOR, CENTER FOR PUBLIC CHOICE & MARKET PROCESS; EDWARD J. LOPEZ, PROFESSOR OF ECONOMICS, DISTINGUISHED PROFESSOR OF CAPITALISM, EXECUTIVE DIRECTOR AND PAST PRESIDENT, PUBLIC CHOICE SOCIETY, WEST CAROLINA UNIVERSITY; RANDALL G. HOLCOMBE, PROFESSOR OF ECONOMICS, FLORIDA STATE UNIVERSITY; MICHAEL C. MUNGER, DIRECTOR, PHILOSOPHY, POLITICS, AND ECONOMICS PROGRAM, DUKE UNIVERSITY; WILLIAM F. SHUGHART II, J. FISH SMITH PROFESSOR IN PUBLIC CHOICE, UTAH STATE UNIVERSITY; AND PAUL STAM, FORMER SPEAKER PRO TEM, NORTH CAROLINA HOUSE OF REPRESENTATIVES, AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS**

(*For Appearances See Inside Cover*)

---

BURLAP AND BARREL, INC., BASIC FUN, INC.,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, EXECUTIVE OFFICE OF THE PRESIDENT, UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, JAMIESON GREER, in his official capacity as U.S. Trade Representative, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, DEPARTMENT OF HOMELAND SECURITY, MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security,

*Defendants-Appellants.*

---

J. Marc Wheat
  *Counsel of Record*
Timothy Harper
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W., Suite 930
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amicus Curiae*

May 19, 2026

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1804, 26-1805

**Short Case Caption** Oregon v. Trump, Burlap and Barrel v. Trump

**Filing Party/Entity** Advancing American Freedom, et al.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/19/2026

Signature: /s/John Marc Wheat

Name: J. Marc Wheat

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Advancing American Freedom, Inc. + | | |
| Independent Institute | | |
| Center for Freedom and Prosperity | | |
| Rio Grande Foundation | | |
| Mountain States Policy Center, Inc. + | | |
| Richard Epstein | | |
| Edward J. Lopez | | |
| Jonathan Bean | | |
| Paul Stam | | |
| Peter T. Calcagno | | |
| Michael C. Munger | | |

☑    Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☐   No    ☑   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

**Additional Represented Entities**

William F. Shughart

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

CORPORATE DISCLOSURE STATEMENT ........................................1

STATEMENT OF INTEREST OF AMICI.............................................2

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..............3

ARGUMENT ........................................................................................7

I.    The Court Should Deny the Motion to Stay so that the
      Administration Cannot use Illegal Tariffs to Advance its Agenda at
      the Expense of the American People...............................................7

CONCLUSION ...................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Burlap and Barrel v. Trump*,
No. 26-1805 (Fed. Cir. May 11, 2026) .........................................................7, 12

*Elrod v. Burns*,
427 U.S. 347 (1976).................................................................................13

*Learning Resources, Inc. v. Trump*,
2026 WL 477534 (Feb. 20, 2026)...............................................................3

*Learning Resources, Inc. v. Trump*,
146 S. Ct. 628 (2026).............................................................................. 10

*Oregon v. United States*,
2026 WL 1257669 (Ct. Int'l Trade May 7, 2026) ..............................................5

*V.O.S. Selections v. Trump*,
149 F.4th 112 (Fed. Cir. 2025) ...............................................................11

*V.O.S. Selections, Inc. v. Trump*,
No. 25-1812 (Fed. Cir. Aug. 29,2025)..............................................................6

*V.O.S. Selections, Inc. v. United States*,
772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).................................................5, 6

**Constitution:**

U.S. Const. Amend. I ...............................................................................13

**Statutes and Regulations:**

Trade Act of 1974, Section 122 ...................................................................*passim*

**Other Authorities:**

Kevin Breuninger, *Bessent says global 15% tariff starts this week, predicts Trump duties will return to the old levels later this year*, CNBC (Mar. 4, 2026 10:04 PM) https://www.cnbc.com/2026/03/04/bessent-says-global-15percent-tariff-starts-this-week-move-back-to-prior-rates-within-5-months.html ...............................................................................12

ii

Jonathan Carson, *U.S. Tariffs and Bankruptcy Rates: What Business Leaders Should Know*, *Forbes* (May 27, 2025 9:30 AM) https://www.forbes.com/councils/forbesbusinesscouncil/2025/05/27/us-tariffs-and-bankruptcy-rates-what-business-leaders-should-know/ ....................9

Megan Cerullo, *Businesses Starting to Receive their IEEPA Tariff Refunds*, *CBS News* (May 14, 2026 9:54 AM) https://www.cbsnews.com/news/trump-ieepa-tariff-refunds-businesses/ ............4

Emergency Motion for a Stay Pending Appeal and Immediate Administrative Stay, *Oregon v. Trump*, No. 26-1804 at 25 (Fed. Cir. May 11, 2026) ......................................................................7, 12

Edwin J. Feulner, Jr., Conservatives Stalk the House: The Story of the Republican Study Committee 212 (Green Hill Publishers, Inc. 1983) ................2

Gabrielle Fonrouge, *Small Businesses are Being Crushed by Trump's Tariffs, and Economists Say it's a Warning for the Economy*, *CNBC* (Oct. 17. 2025) https://www.cnbc.com/2025/10/17/how-much-trump-tariffs-are-costing-small-businesses.html .............................................9

Independence Index: Measuring Life, Liberty and the Pursuit of Happiness, Advancing American Freedom available at https://advancingamericanfreedom.com/aaff-independence-index.....................2

Phillip W. Magness, Marc Wheat, *No, Mr. President, Section 122 Tariffs Won't Work Either*, National Review (Mar. 2, 2026 6:30 AM) ...........................5

NBC News, *Full Coverage: Trump holds press conference after Supreme Court tariff ruling* at 2:50-3:12 (Feb. 20, 2026) https://www.youtube.com/watch?v=u8krsQcG4CI&t=13s..............................12

*One Year from Liberation Day*, Advancing American Freedom Foundation (Apr. 2, 2026) available at https://advancingamericanfreedom.com/one-year-from-liberation-day/...............................................................6, 8

Proclamation No. 11012, *Imposing a Temporary Import Surcharge to Address Fundamental International Payments Problems*, (Feb. 20,2026), 91 Fed. Reg. 9339 (Feb. 25, 2026)......................................................4

iii

*Read the complete transcript of Trump's 2026 State of the Union*,
Associated Press (Feb. 25, 2026 5:04 PM)
https://apnews.com/article/donald-trump-transcript-state-of-union-
2026-c13e2a07df999b464b733f4a6e84dbd4 ......................................................13

Reply Br. for Defendants-Appellants Donald J. Trump, et al., *Learning
Resources, Inc. v. Trump*, No. 25-5202 (D.C. Cir. Aug. 18, 2025).......................5

Rule 28(j) Letter in *V.O.S. Selections, et al. v. Trump, et al.,* Nos. 25-1812,
25-1813 at 14 *V.O.S. Selections*,149 F.4th 112 (Aug. 29, 2025). ........................11

Ana Swanson, Tyler Pager, *U.S. Accuses 16 Trading Partners of Unfair
Practices and Opens Investigation* New York Times (Mar. 11, 2026)
https://www.nytimes.com/2026/03/11/business/economy/trump-trade-
investigations-tariffs.html ....................................................................................12

The Federalist No. 51, at 269 (James Madison) (George Carey & James
McClellan eds., The Liberty Fund 2001)...............................................................8

*U.S. Commerce Secretary Howard Lutnick Speaks with CNBC's Sara
Eisen on "Squawk on the Street" Today*, CNBC (Dec. 3, 2025 10:06
AM) https://www.cnbc.com/2025/12/03/cnbc-transcript-us-commerce-
secretary-howard-lutnick-speaks-with-cnbcs-sara-eisen-on-squawk-on-
the-street-today.html ...........................................................................................11

# CORPORATE DISCLOSURE STATEMENT

Amici curiae Advancing American Freedom; Independent Institute; Center for Freedom and Prosperity; Rio Grande Foundation; Richard Epstein; Jonathan Bean, Research Fellow, Independent Institute, Professor of History, Southern Illinois University; Peter T. Calcagno, Ph.D., Professor of Economics, College of Charleston, Director, Center for Public Choice & Market Process; Edward J. Lopez, Professor of Economics, Distinguished Professor of Capitalism, Executive Director and Past President, Public Choice Society, West Carolina University; Randall G. Holcombe, Professor of Economics, Florida State University; Michael C. Munger, Director, Philosophy, Politics, and Economics Program, Duke University; William F. Shughart II, J. Fish Smith Professor in Public Choice, Utah State University; and Paul Stam, Former Speaker Pro Tem, North Carolina House of Representatives, are nonprofit corporations. They do not issue stock and are neither owned by nor are they owners of any other corporate entity, in part or in whole. They have no parent companies, subsidiaries, affiliates, or members that have issued shares or debt securities to the public. The corporations are operated by volunteer boards of directors.

**STATEMENT OF INTEREST OF AMICI**

Advancing American Freedom (AAF) is a nonprofit organization that promotes and defends policies that elevate traditional American values, including freedom from arbitrary power.[1] AAF "will continue to serve as a beacon for conservative ideas, a reminder to all branches of government of their responsibilities to the nation,"[2] and believes American prosperity depends on ordered liberty and self-government.[3] AAF files this brief on behalf of its 150,374 members nationwide.

Independent Institute is a non-partisan, academic research organization dedicated to advancing peaceful, prosperous, and free societies. Understanding that peace and prosperity are predicated on principles of entrepreneurship and voluntary economic exchange, Independent supports this brief.

*Amici* Richard Epstein; Jonathan Bean, Research Fellow, Independent Institute, Professor of History, Southern Illinois University; Peter T. Calcagno, Ph.D., Professor of Economics, College of Charleston, Director, Center for Public

---

[1] All parties consented to the filing of this amicus brief. No counsel for a party authored this brief in whole or in part. No person other than Amicus Curiae and its counsel made any monetary contribution intended to fund the preparation or submission of this brief.

[2] Edwin J. Feulner, Jr., Conservatives Stalk the House: The Story of the Republican Study Committee 212 (Green Hill Publishers, Inc. 1983).

[3] Independence Index: Measuring Life, Liberty and the Pursuit of Happiness, Advancing American Freedom available at https://advancingamericanfreedom.com/aaff-independence-index/.

Choice & Market Process; Center for Freedom and Prosperity; Edward J. Lopez, Professor of Economics, Distinguished Professor of Capitalism, Executive Director and Past President, Public Choice Society, West Carolina University; Randall G. Holcombe, Professor of Economics, Florida State University; Michael C. Munger, Director, Philosophy, Politics, and Economics Program, Duke University; Rio Grande Foundation; William F. Shughart II, J. Fish Smith Professor in Public Choice, Utah State University; and Paul Stam, Former Speaker Pro Tem, North Carolina House of Representatives believe that the government's compliance with the Constitution's limits on government power is essential to the preservation of American freedom.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case concerns the President's invocation of the Trade Act of 1974's Section 122, a section that was dead on arrival and, for that reason, has never been used. In April 2025, President Trump's "Liberation Day" ushered in tariffs on countries around the world supposedly under the authority of the International Emergency Economic Powers Act (IEEPA). After nearly a year of expedited litigation, the President's use of IEEPA as a tariff power was struck down by the Supreme Court, *Learning Resources, Inc. v. Trump*, 2026 WL 477534 at *14 (Feb. 20, 2026), but not before the government imposed billions of dollars in tariffs on American importers.

Importers who paid IEEPA tariffs had to fight to get refunds and the administration implemented a system to issue them only after the United States Court of International Trade (CIT) directed it to do so. Now, more than a year after "Liberation Day" and months after the Supreme Court's decision striking down the IEEPA tariffs, only about one fifth of those tariffs have been refunded.[4] And even if the administration does ultimately repay all the importers it is legally required to reimburse, neither the taxpayers who must cover the interest owed as part of those refunds nor the Americans who paid higher prices, lost jobs, or missed out on economic opportunities because of the illegal tariffs will ever be made whole.

Within hours of the Supreme Court's decision striking down the President's IEEPA tariffs, the President announced a new rash of duties supposedly under the authority of Section 122. Proclamation No. 11012, *Imposing a Temporary Import Surcharge to Address Fundamental International Payments Problems*, (Feb. 20, 2026), 91 Fed. Reg. 9339 (Feb. 25, 2026). While Section 122, unlike IEEPA, does at least purport to convey tariff authority upon the President in some circumstances, those circumstances have never existed since the formal termination of the Bretton

---

[4] Megan Cerullo, *Businesses Starting to Receive their IEEPA Tariff Refunds*, *CBS News* (May 14, 2026 9:54 AM) https://www.cbsnews.com/news/trump-ieepa-tariff-refunds-businesses/.

Woods exchange rate system in 1976.[5] Section 122 has thus never been used by any President.

After all, it was the administration itself that argued before the D.C. Circuit only months ago that "the President's actions" taken under IEEPA did "not identify or focus on balance-of-payments concerns of the type addressed by Section 122" because "the concerns the President identified in declaring an emergency arise from trade deficits, *which are conceptually distinct from balance-of-payments deficits*."[6] What a difference a few months apparently makes.

Plaintiffs-appellees challenged the President's Section 122 tariffs in the CIT which correctly ruled in their favor and enjoined the President's enforcement of those tariffs against the Plaintiffs only. *Oregon v. United States*, 2026 WL 1257669 at *2 (Ct. Int'l Trade May 7, 2026). The Section 122 tariffs being collected even now are, again, illegal, and the importers who are paying them are being set up for ongoing hardship when they are able to seek refunds in the coming months.

In *V.O.S. Selections, Inc. v. United States*, the CIT ruled quickly for the plaintiffs and issued a permanent injunction against the President's collection of

---

[5] Phillip W. Magness, Marc Wheat, *No, Mr. President, Section 122 Tariffs Won't Work Either*, National Review (Mar. 2, 2026 6:30 AM).

[6] Reply Br. for Defendants-Appellants Donald J. Trump, et al., *Learning Resources, Inc. v. Trump*, No. 25-5202 (D.C. Cir. Aug. 18, 2025).

IEEPA tariffs. 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025). This Court, no doubt relying on the good faith of the administration, stayed that injunction pending appeal. *V.O.S. Selections, Inc. v. Trump*, 2025WL1649290 at \*1 (Fed. Cir. Jun. 10, 2025). After finding that IEEPA did not vest the President with the tariff power he claimed, this Court withheld the issuance of its mandate pending the Supreme Court's consideration of the case. *V.O.S. Selections, Inc. v. Trump*, No. 25-1812 (Fed. Cir. Aug. 29, 2025). The administration proceeded to collect IEEPA tariffs until February 2026 when the Supreme Court struck down the President's executive order. Now those illegally collected tariffs are being refunded slowly and some of that money will likely never be returned. Further, much of the harm caused by those tariffs cannot be unwound by any court order.[7]

The Court should decline to allow the administration to further exacerbate the harm it has already caused, much of which is irreversible. It should decline the administration's motion to stay the CIT's injunction and rule expeditiously on the merits.

---

[7] *One Year from Liberation Day*, Advancing American Freedom Foundation (Apr. 2, 2026) available at https://advancingamericanfreedom.com/one-year-from-liberation-day/.

6

## ARGUMENT

**I.    The Court Should Deny the Motion to Stay so that the Administration Cannot use Illegal Tariffs to Advance its Agenda at the Expense of the American People.**

Justice delayed is justice denied. Yet, delay is among the most effective and lopsided litigation tactics of the powerful against the weak. All litigation takes time. For Americans challenging illegal government policies, that time is of the essence. For the government, on the other hand, delay often causes no harm or even allows it to extend the duration of illegal policies while challenges proceed.

*A. Illegal tariffs irreparably harm the public.*

In this case, the administration claims that "[t]he equities and public interest [] heavily favor" its requested stay because "the government (and thus the public) would suffer significant policy consequences, and likely lose funds irrevocably, absent a stay."[8] It is, of course, conventional to refer to the position of the Executive Branch in litigation as the position of "the government." But especially where the Executive Branch asserts the authority to exercise a power granted solely to Congress by the Constitution, that convention masks reality.

---

[8] Emergency Motion for a Stay Pending Appeal and Immediate Administrative Stay, *Oregon v. Trump*, No. 26-1804 at 25 (Fed. Cir. May 11, 2026); *Burlap and Barrel v. Trump*, No. 26-1805 (Fed. Cir. May 11, 2026).

The administration's further conflation of "the government" by which it means itself, not the federal government as a whole, with "the public" contravenes the whole logic of constitutional government. The Constitution is rife with limitations on government power, explicit and implicit, because the Framers and ratifiers of the Constitution knew that, while government was the agent of the people, it did not always act in the best interests of the people because those who govern are not angels.[9]

Not only would a stay not harm the public, it would protect it from the continued mounting of the irreversible damage it has already suffered as a result of more than a year under illegal tariffs. One year after "Liberation Day," the American economy had lost 700,000 full time jobs, and "1.4 million working age Americans had left the workforce altogether."[10] Similarly, "manufacturing jobs [] declined every month except one" during that period.[11] The Federal Reserve blamed half a percent of the year's inflation on tariffs and, in the coming year, prices could increase by 3% as a result of tariffs on manufacturing.[12]

---

[9] *See, e.g.*, The Federalist No. 51, at 269 (James Madison) (George Carey & James McClellan eds., The Liberty Fund 2001).

[10] *One Year from Liberation Day*, Advancing American Freedom Foundation (Apr. 2, 2026) available at https://advancingamericanfreedom.com/one-year-from-liberation-day/.

[11] *Id.*

[12] *Id.*

8

When businesses lose profits,[13] when jobs are lost or are never created,[14] when businesses and individuals file for bankruptcy,[15] the damage is not easily reversed, and in many cases never will be. Refunds cannot reverse much of this damage.

"[T]he public" for which the administration claims to be fighting, is the one that foots the bill. Americans not only pay the tariffs themselves, but they also pay the higher prices the tariffs cause, they lose jobs, they miss their mortgage payments. And then, adding insult to injury, they are stuck paying the taxes that fund the legally required interest owed to those receiving tariff refunds.

The costs of the tariffs, financial and otherwise, are born almost entirely by the American people. These costs far exceed the reparation available through tariff refunds. When the government acts within its constitutional constraints and seeks to protect the liberty of the people, it can be said to represent the interests of the public. When the President imposes his preferred policy through unconstitutional means at

---

[13] Gabrielle Fonrouge, *Small Businesses are Being Crushed by Trump's Tariffs, and Economists Say it's a Warning for the Economy*, *CNBC* (Oct. 17. 2025) https://www.cnbc.com/2025/10/17/how-much-trump-tariffs-are-costing-small-businesses.html.

[14] *Id.*

[15] Jonathan Carson, *U.S. Tariffs and Bankruptcy Rates: What Business Leaders Should Know*, *Forbes* (May 27, 2025 9:30 AM) https://www.forbes.com/councils/forbesbusinesscouncil/2025/05/27/us-tariffs-and-bankruptcy-rates-what-business-leaders-should-know/.

clear costs to the American people, the administration has no business claiming to speak for those it asks the court not to defend. This Court should deny that request.

*B. The administration is using Section 122 tariffs, despite its earlier admission that that statute did not apply, as a means of maintaining its illegal tariff policy while it seeks other means to implement it.*

Despite expeditious action by each court that considered the cases challenging President Trump's IEEPA tariffs, the Supreme Court's decision still arrived the better part of a year after the litigation began and, even now, partial relief is only trickling in. Throughout that litigation, the President was able to use his illegal tariffs as leverage in international negotiation and to collect billions of dollars, much of which may never be returned to those Americans who paid them. And that which is returned is being returned with interest, a cost born by American taxpayers for no reason other than that the President alone took illegal action. *See Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, 646 (2026) (holding that "IEEPA's grant of authority to 'regulate . . . importation'" does not confer upon the President the power to impose tariffs).

If it took a year for courts to resolve a challenge to each new statutory theory of tariff authority, the President might only need four implausible legal theories to wield illegal tariff power throughout his term. And if courts become fatigued with

10

repeated tariff litigation and no longer expedite consideration, the President may need even fewer.

There is evidence that this is the administration's strategy. In a filing before the Federal Circuit on August 29, 2025 in *V.O.S. Selections v. Trump*, 149 F.4th 112 (Fed. Cir. 2025), Secretary of Commerce Howard Lutnick declared "under penalty of perjury" that "[w]ithout the viability of IEEPA tariffs, the United States would be weakened and would lose the essential tool to address" the alleged national emergency.[16] Further, he claimed that "President Trump's decisive use of IEEPA is America's *last chance* to turn the tide."[17] He claimed that the President's alleged tariff power under IEEPA was "essential."[18]

Yet, just weeks later, Secretary Lutnick said the opposite, telling a media outlet, "If . . . the Supreme Court didn't side with the president, which I think they will, then we have other tools and we'll put them right in place. Tariffs are here to stay."[19] Similarly, hours after the Supreme Court's announcement of its decision in *Learning Resources*, the President held a press conference in which he said, "there

---

[16] Rule 28(j) Letter in *V.O.S. Selections, et al. v. Trump, et al.,* Nos. 25-1812, 25-1813 at 14 *V.O.S. Selections*, 149 F.4th 112 (Aug. 29, 2025).

[17] *Id.* at 15 (emphasis added).

[18] *Id.*

[19] *U.S. Commerce Secretary Howard Lutnick Speaks with CNBC's Sara Eisen on "Squawk on the Street" Today*, CNBC (Dec. 3, 2025 10:06 AM) https://www.cnbc.com/2025/12/03/cnbc-transcript-us-commerce-secretary-howard-lutnick-speaks-with-cnbcs-sara-eisen-on-squawk-on-the-street-today.html.

are methods, practices, statutes, and authorities . . . that are even stronger than the

IEEPA tariffs available to the President of the United States."[20] He also claimed that

the Court's decision "made a president's ability to both regulate trade and impose

tariffs more powerful and more crystal clear rather than less."[21]

Section 122 tariffs are the next step in this strategy. In an interview in March

2026, Treasury Secretary Scott Bessent said, "It's my strong belief that the tariff rates

will be back to their old rate within five months," and acknowledged that Section

122 tariffs are limited to 150 days.[22] The administration has acknowledged that these

tariffs are a stop-gap measure.[23] The President wants to wield tariff power however

---

[20] NBC News, *Full Coverage: Trump holds press conference after Supreme Court tariff ruling* at 2:50-3:12 (Feb. 20, 2026) https://www.youtube.com/watch?v=u8krsQcG4CI&t=13s.

[21] *Id.* at 11:14-11:30.

[22] Kevin Breuninger, *Bessent says global 15% tariff starts this week, predicts Trump duties will return to the old levels later this year*, CNBC (Mar. 4, 2026 10:04 PM) https://www.cnbc.com/2026/03/04/bessent-says-global-15percent-tariff-starts-this-week-move-back-to-prior-rates-within-5-months.html.

[23] Emergency Motion for a Stay Pending Appeal and Immediate Administrative Stay, *Oregon v. Trump*, No. 26-1804 at 22-23 (Fed. Cir. May 11, 2026); *Burlap and Barrel v. Trump*, No. 26-1805 (Fed. Cir. May 11, 2026). The Administration's recent announcement that it is opening investigations into the trading practices of 16 nations with investigations into 60 more likely on the way suggests that Section 122 is, in fact, merely a stopgap measure. Ana Swanson, Tyler Pager, *U.S. Accuses 16 Trading Partners of Unfair Practices and Opens Investigation* New York Times (Mar. 11, 2026) https://www.nytimes.com/2026/03/11/business/economy/trump-trade-investigations-tariffs.html.

he can get it and regardless of legality because, even if they are ultimately struck down, he can use them as a tool of protectionism and negotiation in the meantime.

As he said in his State of the Union address:

> [A]lmost all countries and corporations want to keep the deal that they already made . . . knowing that the legal power that I as president have to make a new deal could be far worse for them and, therefore, they continue to work along the same successful path that we had negotiated before the Supreme Court's unfortunate involvement.[24]

The President may believe, as has so far been the case, that he can wield power on the basis of weak legal arguments because courts will take time to rule against him and will be deferential to him throughout the process.

That is not justice and it is unbecoming of a nation governed by the rule of law. It is therefore imperative that courts continue to expedite these cases and that they impose injunctions without stays. As the Supreme Court has recognized, "The loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The same is true of the right to be free from arbitrary power, the very thing from which our Constitution exists to protect the people.

---

[24] *Read the complete transcript of Trump's 2026 State of the Union*, Associated Press (Feb. 25, 2026 5:04 PM) https://apnews.com/article/donald-trump-transcript-state-of-union-2026-c13e2a07df999b464b733f4a6e84dbd4.

13

Stays merely prolong the effectiveness of the administration's illegal actions and make the ultimate refund process more difficult. They also exacerbate those harms which will never be remedied. The President's tariffs are illegal and harmful. The Court should deny the administration's motion to stay the CIT's injunction and should rule expeditiously on the merits.

## CONCLUSION

This Court should deny Defendant-Appellants motion for stay.


Respectfully submitted,

/s/ J. Marc Wheat
J. Marc Wheat
    *Counsel of Record*
Timothy Harper
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W., Suite 930
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

**Form 19**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  2026-1804, -1805

**Short Case Caption:**  State of Oregon v. Trump

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __2,783__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __05/19/2026__

Signature:  /s/ J. Marc Wheat

Name:  J. Marc Wheat