# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## Nos. 2026-1804, 2026-1805, 2026-1928

STATE OF OREGON, STATE OF ARIZONA, STATE OF CALIFORNIA, STATE OF NEW YORK, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF ILLINOIS, OFFICE OF THE GOVERNOR EX REL. ANDY BESHEAR, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF KENTUCKY, STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NORTH CAROLINA, JOSH SHAPIRO, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, STATE OF WISCONSIN,

*Plaintiffs-Cross-Appellants,*

STATE OF WASHINGTON,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, DEPARTMENT OF HOMELAND SECURITY, MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION, UNITED STATES,

*Defendants-Appellants.*

--------------------------------------------------------

BURLAP AND BARREL, INC., BASIC FUN, INC.,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, EXECUTIVE OFFICE OF THE PRESIDENT, UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION, JAMIESON GREER, IN HIS OFFICIAL CAPACITY AS U.S. TRADE REPRESENTATIVE, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, DEPARTMENT OF HOMELAND SECURITY, MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,

Defendants-Appellants.

Appeals from the United States Court of International Trade in Nos. 1:26-cv-01472-3JP and 1:26-cv-01606-3JP, Senior Judge Timothy C. Stanceu, Chief Judge Mark A. Barnett, Judge Claire R. Kelly.

**BRIEF OF JAMES H. POOLE AS AMICUS CURIAE
IN SUPPORT OF DEFENDANTS-APPELLANTS
AND VACATUR AND REMAND**

James H. Poole, Pro Se
Amicus Curiae in His Individual Capacity

875 Helicopter Road
Thomasville, Georgia 31757

Telephone: 229-201-1673
Email: savetheamericancommunities@gmail.com

Dated: July 28, 2026

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, amicus curiae James H. Poole, appearing pro se in his individual capacity, certifies the following.

1. Represented Entities. None. Amicus appears pro se in his individual capacity and represents no entity.

2. Real Party in Interest. Not applicable. Amicus appears on his own behalf.

3. Parent Corporations and Stockholders. Not applicable.

4. Legal Representatives. None.

5. Related Cases. The consolidated appeals identified in the caption arise from United States Court of International Trade Nos. 1:26-cv-01472-3JP and 1:26-cv-01606-3JP. Amicus is also aware of *Burlap and Barrel, Inc. v. Greer*, Ct. No. 26-03345, and *Learning Resources, Inc. v. United States*, Ct. No. 26-03347, which are discussed below in this brief, but does not understand those matters to constitute related cases requiring disclosure under Federal Circuit Rule 47.5.

6. Organizational Victims and Bankruptcy Cases. None.

7. Disclosure of Financial Interest. Amicus is the founder, Executive Chairman, Chief Executive Officer, and a shareholder of Obelisk Tech Systems Inc., a HUBZone-certified, ITAR-registered small business located in Thomasville, Georgia (CAGE 9S0L8; UEI U34MSJ6A6413). Amicus does not appear for that company. This disclosure is made to assist the Court in determining whether any ground for disqualification exists under 28 U.S.C. § 455.

Dated: July 28, 2026

/s/ James H. Poole
JAMES H. POOLE
Amicus Curiae in His Individual Capacity

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST......................................................................................i

TABLE OF AUTHORITIES...................................................................................iii

STATEMENT OF AUTHORITY TO FILE AND RULE 29(a)(4)(E) STATEMENT................................................................................................1

INTEREST OF AMICUS CURIAE.........................................................................1

SUMMARY OF ARGUMENT..................................................................................3

ARGUMENT...............................................................................................................6

    STANDARD OF REVIEW................................................................................6

        I.  The judgment must be vacated because the trial court granted summary judgment on a dispositive construction no party advanced, without the notice USCIT Rule 56(f)(2) requires........................................................6

        II.  The permanent injunction must be vacated with the judgment...............13

        III.  The construction below permits an executive statistical agency to render an Act of Congress inoperable...................................13

        IV.  The judgment subjects a Presidential proclamation to a form of review this Court and the Supreme Court have foreclosed...................................14

        V.  Congress enacted an economic condition, not the names of three statistical series................................................16

        VI.  "Large and serious" commits evaluative judgment to the Executive....18

        VII.  Section 122 is not IEEPA................................................20

        VIII.  The Court should decide the Section 122 question and no more.......22

        IX.  The importer appellees do not speak for all American small business..26

        X.  The lapse of the surcharge does not permit leaving the construction below in place.................................27

CONCLUSION..........................................................................................................28

CERTIFICATE OF COMPLIANCE.......................................................................31

CERTIFICATE OF SERVICE.................................................................................31

# TABLE OF AUTHORITIES

**CASES**

*Burlap and Barrel, Inc. v. Greer*, Ct. No. 26-03345..................................-1, 2, 25

*Dalton v. Specter*, 511 U.S. 462 (1994).....................................-1, 4, 6, 14, 19, 20

*Franklin v. Massachusetts*, 505 U.S. 788 (1992)........................................-1, 4, 14

*George S. Bush & Co. v. United States*, 310 U.S. 371 (1940)...............-1, 4, 6, 14

*HMTX Industries LLC v. United States*, 156 F.4th 1236 (Fed. Cir. 2025)…-1, 5, 24

*Jennings v. Rodriguez*, 583 U.S. 281 (2018)...................................................-1, 15

*Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162 (2016).....-1, 27

*Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026)...........................passim

*Learning Resources, Inc. v. United States*, Ct. No. 26-03347.....................-1, 25

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).................-1, 10, 15

*Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147 (10th Cir. 2017).....................-1, 10

*Solar Energy Industries Ass'n v. United States*, 86 F.4th 885 (Fed. Cir. 2023) -1, 25

**STATUTES**

19 U.S.C. § 2132.....................................................................................passim

19 U.S.C. § 2411...........................................................................-1, 2, 5, 24, 29

28 U.S.C. § 455.........................................................................................-1, 2

44 U.S.C. § 1507........................................................................................-1, 25

50 U.S.C. § 1701........................................................................................-1, 20

Trade Act of 1974, Pub. L. No. 93-618, 88 Stat. 1978.................................-1, 20

International Emergency Economic Powers Act, Pub. L. No. 95-223, tit. II, 91 Stat. 1626.................................................................................................-1, 20

Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, 102 Stat. 1107.................................................................................................-1, 24

**RULES**

Fed. R. App. P. 29....................................................................................-1, 1, 31

Fed. R. App. P. 32.............................................................................................31

Fed. Cir. R. 47.4.................................................................................................i

Fed. Cir. R. 47.5.................................................................................................i

USCIT R. 56(f)..........................................................................................passim

USCIT R. 61.....................................................................................................12

USCIT R. 65(d).................................................................................................13

**ADMINISTRATIVE MATERIALS**

Proclamation No. 11012, 91 Fed. Reg. 9,339 (Feb. 25, 2026)....................passim

91 Fed. Reg. 12,884 (Mar. 17, 2026)........................................................0, 25

91 Fed. Reg. 12,886 (Mar. 17, 2026)........................................................0, 25

91 Fed. Reg. 34,272 (June 5, 2026)..........................................................0, 25

**OTHER AUTHORITIES**

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 2720.1 (4th ed.)..........................................................................0, 10

## STATEMENT OF AUTHORITY TO FILE AND RULE 29(a)(4)(E) STATEMENT

This brief is submitted with the accompanying motion for leave under Federal Rule of Appellate Procedure 29(a)(3). It is timely under Federal Rule of Appellate Procedure 29(a)(6) because it is filed within seven days after the principal brief of the party supported, which was filed July 21, 2026.

No party or party's counsel authored this brief in whole or in part. No party, party's counsel, or any person other than amicus contributed money intended to fund the preparation or submission of this brief. Fed. R. App. P. 29(a)(4)(E).

## INTEREST OF AMICUS CURIAE

Amicus James H. Poole appears pro se in his individual capacity. He is not a party and represents no entity.

Amicus takes no position on whether the President identified a balance-of-payments deficit within the meaning of 19 U.S.C. § 2132(a)(1). That position is limited to the sufficiency of the Proclamation's findings. It does not concede that the trial court applied the correct legal framework, that Section 2132(a)(1) is confined to the measures the trial court identified, or that the procedure by which the trial court reached its construction satisfied USCIT Rule 56(f)(2). Amicus's interest is in the breadth of the opinion this Court issues.

That interest is concrete. Amicus personally participated in a separate administrative proceeding conducted under Section 301 of the Trade Act of 1974, 19

1

U.S.C. § 2411. He testified before the Section 301 Committee of the Office of the United States Trade Representative on April 28–29, 2026 and again on July 7–9, 2026, and his written submissions appear in the public dockets at USTR-2026-0133, USTR-2026-0134, USTR-2026-0265, and USTR-2026-0266. The final action in that proceeding issued July 23, 2026. The next day, appellee Burlap and Barrel, Inc. filed suit challenging it. *Burlap and Barrel, Inc. v. Greer*, Ct. No. 26-03345 (Ct. Int'l Trade filed July 24, 2026). An opinion in this appeal written more broadly than the question presented requires would be deployed in that case, against a record this Court has never seen.

Amicus is also the founder, Executive Chairman, Chief Executive Officer, and a shareholder of a HUBZone-certified, ITAR-registered small manufacturer in Thomasville, Georgia that participated in that proceeding in support of the agency's action. He does not appear for that company, and states the affiliation as disclosure under 28 U.S.C. § 455 rather than as a representative capacity.

Amicus is a member of the Council of Professional Associations on Federal Statistics ("COPAFS") and a user of federal economic and statistical products. He offers that affiliation solely to explain his concrete interest in the institutional treatment of official federal statistics. He does not appear on behalf of COPAFS, does not represent the Bureau of Economic Analysis or any federal statistical agency, and does not offer expert statistical testimony.

That perspective bears on one institutional consequence of the judgment below: an interpretation under which changes in the publication, naming, or organization of federal statistical series can render an otherwise operative Act of Congress unusable. The question is legal rather than technical. Statistical agencies produce and revise official measures; they do not possess authority to repeal statutory powers through changes in publication methodology.

## SUMMARY OF ARGUMENT

This brief advances three propositions. First, Section 122 can and should be decided on its own text and on the procedure the trial court owed the parties. Second, Section 301 is a materially different delegation that expressly names duties, and nothing in this appeal presents it. Third, any language broader than the question presented would prejudge separate litigation now pending on a record this Court has not reviewed.

The first proposition disposes of the appeal without reaching the economics. The panel below did not adopt either party's construction of § 2132(a)(1). The States argued for the contemporary measure used by the Bureau of Economic Analysis. The Government argued that the current account balance is the appropriate measure. The majority rejected both and held that only the liquidity, official-settlements, and basic-balance measures reported to Congress in 1974 can satisfy the statute. As the dissent observed, "the majority adopts a definition no party advocated." That

3

construction was reached without the notice and reasonable opportunity to respond that USCIT Rule 56(f) requires before a court grants summary judgment on grounds not raised by a party. Vacatur on that ground alone is available, and it would return the case for the informed briefing the rule contemplates.

If the Court reaches the construction, two features of the judgment below warrant attention. It renders a statute inoperable by reference to which statistical series an executive agency happens to publish — as the dissent put it, "the BEA in effect can repeal Section 122(a)(1) by changing how it measures the balance of payments." And it conducts what is in substance arbitrary-and-capricious review of a Presidential proclamation, a form of review this Court's precedent and the Supreme Court's forbid. *Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992); *Dalton v. Specter*, 511 U.S. 462, 477 (1994); *George S. Bush & Co. v. United States*, 310 U.S. 371, 379–80 (1940).

This appeal also does not concern IEEPA. Section 122 is an express, congressionally enacted tariff authority within the Trade Act of 1974, codified in Title 19 among the customs laws. IEEPA is title II of a separate statute enacted three years later, codified in Title 50 among the laws of war and national defense. *Learning Resources* resolved whether an emergency statute contains an unstated tariff power. This case concerns how to construe a tariff power Congress stated expressly — "a temporary import surcharge . . . in the form of duties" — subject to

an express predicate, an express fifteen-percent ceiling, and an express one-hundred-fifty-day limit. 19 U.S.C. § 2132(a).

Whatever the Court holds, it should hold it about Section 122. This is the point on which amicus can assist and the parties cannot. Section 122 is a temporary balance-of-payments authority carrying a rate ceiling and a 150-day limit, exercised by proclamation. Section 301 is a trade-remedy statute in a title Congress captioned "Relief From Unfair Trade Practices," administered by the Trade Representative, expressly authorizing him to "impose duties or other import restrictions on the goods of . . . such foreign country," 19 U.S.C. § 2411(c)(1)(B), and expressly authorizing action "without regard to whether or not such goods or economic sector were involved in the act, policy, or practice," id. § 2411(c)(3). This Court sustained an action under that statute eleven months ago. *HMTX Industries LLC v. United States*, 156 F.4th 1236 (Fed. Cir. 2025). Nothing in this appeal presents that statute, and no language in the opinion should reach it.

Finally, the importer appellees do not represent all American small business, and the surcharge's lapse on July 24, 2026 narrows the live controversy without relieving the Court of the obligation to correct the construction below.

5

**ARGUMENT**

**STANDARD OF REVIEW**

This Court reviews the Court of International Trade's grant of summary judgment without deference, applying anew the standard the trial court was required to apply. Questions of statutory construction are questions of law reviewed de novo. Whether the trial court complied with USCIT Rule 56(f)(2) before entering judgment on a ground no party raised is likewise a question of law. The entry of a permanent injunction is reviewed for abuse of discretion, and a legal error underlying an injunction is an abuse of discretion. The President's underlying factual determinations under 19 U.S.C. § 2132(a) are not reviewable under the Administrative Procedure Act or reweighed as agency factfinding. Judicial review remains available to determine whether the President acted within the statutory authority Congress conferred. *Dalton v. Specter*, 511 U.S. 462, 477 (1994); *George S. Bush & Co. v. United States*, 310 U.S. 371, 379–80 (1940).

**I. The judgment must be vacated because the trial court granted summary judgment on a dispositive construction no party advanced, without the notice USCIT Rule 56(f)(2) requires.**

The procedural sequence is undisputed and it is dispositive. Plaintiffs moved for summary judgment. Defendants opposed and filed no cross-motion. The State plaintiffs argued that "balance-of-payments deficits" carries the meaning the Bureau of Economic Analysis assigns it today. Defendants argued that the current account

6

balance is the appropriate contemporary measure. The three-judge panel rejected both positions, held that the term reaches only the liquidity, official-settlements, and basic-balance measures reported to Congress in 1974, held on that basis that Proclamation No. 11012 is ultra vires, entered summary judgment for plaintiffs, and permanently enjoined the Proclamation as to three of them. Majority Op. at 44–46; Judgment (May 7, 2026). At no point before entry of judgment did the panel notify the parties that it was considering that construction or afford them time to address it.

USCIT Rule 56(f) provides: "Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." The trial court did what subsection (f)(2) describes and omitted what the rule requires first.

That omission requires vacatur, and it requires this Court to resolve no economic question. The chain is short and each link is independent of the merits: the rule requires notice and a reasonable time to respond before a court grants a motion on grounds no party raised; the violation is that the panel adopted a third construction without giving notice; the prejudice is that neither side briefed the construction on which it lost; and the remedy is vacatur and remand for that briefing.

7

The dissent identified the problem precisely: "plaintiffs and defendants disagree on the statutory interpretation of that term, but the majority adopts a definition no party advocated." And: "No party had notice" that the court would decide the case on that basis. USCIT Rule 56(f) exists for exactly this circumstance. It permits a court to grant summary judgment on grounds not raised by a party only "[a]fter giving notice and a reasonable time to respond." That procedure was not followed.

The consequence is not formal. As the dissent noted, had the parties been given notice, "the court might have had the benefit of their arguments as to whether confining the President's discretion to the use of liquidity, official settlements, or basic balance as measures of the payments balance is the correct interpretation of Section 122(a)(1)." No court had previously construed "balance-of-payments deficits" in § 2132(a)(1). A statutory construction of first impression, resolving the meaning of a term Congress left undefined in a statute never before litigated, was adopted without adversarial testing of the very ground on which it rests.

The majority's answer to the dissent does not withstand the rule's text. The majority addressed Rule 56(f) in a footnote. It reasoned that the Government conceded at oral argument that balance-of-payments deficits are measured differently today than in 1974, that the Government discussed those alternatives in its brief, and that "the grounds the Plaintiffs advanced and of which Defendants had

8

notice necessarily require the court to interpret the meaning of 'balance-of-payments deficits' for purposes of Section 122." Majority Op. at 44 n.37.

That reasoning conflates notice that the court would interpret a term with notice of the construction the court would adopt and enter judgment upon. Rule 56(f)(2) speaks of "grounds," not of subject matter. If notice that a statutory term is disputed satisfied the rule, Rule 56(f)(2) would never apply in a statutory-construction case, because every summary-judgment motion resting on statutory meaning places the court's interpretive task in issue. The rule would be a nullity in precisely the class of cases in which surprise carries the greatest consequence.

The concession does not carry the weight the footnote assigns it. That the 1974 measures are no longer treated as material describes current statistical practice. The holding below prescribes: those measures are the only ones the statute permits, and a proclamation not framed in their terms is ultra vires. A party who concedes that a measure has fallen out of use has not been placed on notice that a court will make that measure legally mandatory.

Oral argument does not supply the notice the rule requires. As the dissent stated, "the oral argument did not provide 'notice and a reasonable time to respond' as required by Rule 56(f)," and "[s]atisfying that procedural requirement is not optional on the part of this Court." Dissent Op. at 29. Rule 56(f)(2) requires notice and "a reasonable time to consider the court's sua sponte theory and to develop the

9

legal and factual arguments to dispute it." *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1150–51 (10th Cir. 2017). The consequence is settled: "if the court determines to enter summary judgment on a ground not presented or argued by the parties, the failure to give the losing party an opportunity to defend against that ground provides a ground for reversal." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720.1 (4th ed.).

The majority's opinion confirms that it departed from both parties' positions. It wrote that "[b]oth Plaintiffs and Defendants overstate the consequences" of the transition to floating exchange rates, and that "[b]oth Plaintiffs and Defendants miss the mark." Majority Op. at 44. A court that rejects both parties' constructions and enters judgment on its own has done what Rule 56(f)(2) governs.

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024), on which the footnote relies, establishes that courts decide statutory meaning independently. It does not address the procedure a court must follow before entering judgment on a construction no party proposed. The two propositions coexist: a court exercises independent judgment on the law, and Rule 56(f)(2) prescribes when it must give notice before doing so dispositively.

The error was prejudicial, not incidental. A procedural defect warrants relief only if it mattered. This one supplied the rule of decision. The construction adopted without notice was not background reasoning or an alternative holding; it was the

ground on which the Proclamation was declared invalid and the injunction entered. Where an unbriefed theory becomes the operative rule, the absence of notice is prejudicial by definition.

The parties had counterauthorities they were never permitted to develop. With notice, they could have addressed whether the three historical measures were exclusive or merely illustrative; whether comparable modern measures capture the same underlying condition; whether legislative materials may supply an exclusivity rule Congress omitted; whether the discontinuation of a publication format can control a statute's operability; and whether the Proclamation's findings satisfy § 2132(a)(1) under a methodology other than the one the court selected.

The absence of a technical record is a separate defect from the absence of legal briefing. Once the court made statistical equivalence and exclusivity central to its holding, the relationships among the liquidity balance, the official-settlements balance, the basic balance, the current account, and their modern successors became material. The parties were given no opportunity to present the technical material necessary to test the rule the court adopted. Amicus does not contend that expert development was legally mandatory. He contends that once the court placed technical exclusivity at the center of the judgment, the absence of adversarial development of that subject prejudiced the party that lost on it.

11

Public availability of the source materials does not cure the want of notice. The Senate Report and the December 1974 staff print were publicly available. The dispositive inference drawn from them — that the three tables Congress's committee once printed are the only measures the statute permits — was neither noticed nor tested. Notice under Rule 56(f) runs to the ground for judgment, not to the existence of documents in a library. A court may take notice that a 1974 committee print reported certain balances; it does not follow that the print establishes those balances as the only legally permissible measures of a statutory condition. The first is judicial notice of a publication. The second is a contested determination about economic measurement. The judgment treats them as a single act.

USCIT Rule 61 does not preserve the judgment. Rule 61 directs a court to disregard errors that "do not affect any party's substantial rights." The right at issue is the right to be heard on the ground of decision before judgment enters upon it. That right was not merely affected; it was never exercised. A construction adopted without adversarial testing, then used to declare a Presidential proclamation invalid and to enjoin its operation, is not a defect a reviewing court may disregard.

Disposition. The judgment should be vacated and the case remanded so that the parties may brief the construction the trial court adopted. That disposition creates no precedent concerning the balance of payments, requires no ruling on the ultimate statutory measure, and reaches no authority under Section 301.

12

## II. The permanent injunction must be vacated with the judgment.

USCIT Rule 65(d)(1) provides that "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required."

The reasons stated for the permanent injunction are the reasons stated for the judgment: that Proclamation No. 11012 is ultra vires because it does not identify balance-of-payments deficits measured by liquidity, official settlements, or basic balance. Majority Op. at 45–46. Amicus does not contend that the order failed to state reasons. He contends that the reasons it states cannot survive the vacatur of the construction that supplied them. An injunction resting on a construction adopted without the notice Rule 56(f)(2) requires retains no stated basis once that construction is set aside, and the relief must fall with the judgment that supports it.

That disposition is narrower than the merits. This Court may vacate an injunction whose stated basis has been set aside without deciding whether a differently reasoned injunction could issue on remand.

## III. The construction below permits an executive statistical agency to render an Act of Congress inoperable.

The majority held that the meaning of "balance-of-payments deficits" fixed in 1974 and is limited to three measures. It also acknowledged that those measures are no longer published in the form the Senate Report used. The dissent drew the

inference: "the BEA in effect can repeal Section 122(a)(1) by changing how it measures the balance of payments. That could not have been the legislative intent."

A construction under which a bureau's decision to discontinue a data series renders a statutory authority inoperable is not a construction of the statute; it is a repeal of it by an entity that cannot repeal statutes. The majority's own opinion acknowledges that § 2132(a)(2) and (a)(3) remain operative. A reading that leaves one subsection inoperable while its neighbors remain operative is wrong.

Disposition. Section 2132(a)(1) remains operative regardless of which series the Bureau of Economic Analysis currently publishes, and the Court need not identify which contemporary series satisfies the statute.

## IV. The judgment subjects a Presidential proclamation to a form of review this Court and the Supreme Court have foreclosed.

The majority acknowledged that whether deficits are "large and serious" is "a discretionary determination within the province of the Executive Branch, review of which by the judiciary is impermissible," citing *Dalton v. Specter*, 511 U.S. 462, 477 (1994). It then held the Proclamation invalid because it did not "assert the existence of the conditions required by the statute" in the analytical form the court prescribed.

Those two propositions cannot both stand. The President is not an agency, and his proclamations are not reviewable under the arbitrary-and-capricious standard. *Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992). Nor do courts review the President's factual determinations under a tariff statute. *George S. Bush & Co. v.*

14

*United States*, 310 U.S. 371, 379–80 (1940). As the dissent put it, "[t]he Proclamation is not a treatise or a judicial opinion." Proclamation No. 11012 contains multiple findings of fact concerning the payments position. 91 Fed. Reg. 9,339 (Feb. 25, 2026).

*Loper Bright* requires courts to exercise independent judgment on questions of law. 603 U.S. at 394. It does not authorize a court to select among competing economic measurement conventions and denominate the result statutory interpretation. The Supreme Court said as much this Term in the decision the majority itself cites: "we claim no special competence in matters of economics or foreign affairs." *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 146 S. Ct. 628, 646 (2026).

Finally, the majority invoked nondelegation avoidance to justify its narrowing construction. But constitutional avoidance operates only on genuine ambiguity, not as a license to adopt the narrowest imaginable reading. *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). And Section 122 supplies an intelligible principle on its face: enumerated triggers, a rate ceiling, a 150-day duration, mandatory congressional consultation, and reporting. The delegation concern that motivated the narrowing is not present.

The ordering also matters. Constitutional avoidance is the last tool, not the first. A court applies text, then context and structure, then the ordinary tools of

construction, and reaches avoidance only if genuine ambiguity survives. A court that begins with constitutional anxiety and reasons backward toward the narrowest conceivable reading has inverted the sequence. And if the nondelegation concern was not the parties' central theory, the avoidance holding carries the same notice defect as the construction it was invoked to justify.

Disposition. The form of review the judgment applies is foreclosed as to Presidential proclamations, and the Court may say so without reviewing the President's underlying economic judgment.

## V. Congress enacted an economic condition, not the names of three statistical series.

The phrase Congress enacted is "large and serious United States balance-of-payments deficits." 19 U.S.C. § 2132(a)(1). It is not "official settlements balance," "liquidity balance," or "basic balance." Those three labels appear in a Senate Report and a December 1974 committee staff print. They do not appear in the statute.

Congress plainly knew how to name a measurement convention; it named none. The judgment below replaces the enacted phrase with labels Congress declined to enact, and it does so on the authority of legislative materials. Reports and staff prints may illuminate the problem Congress confronted. They do not supply operative text, and they cannot narrow a term Congress wrote more broadly than the sources from which the court drew its limitation.

16

The distinction the judgment collapses is between a condition and a method of detecting it. Section 2132(a)(1) identifies a state of affairs — a large and serious deficit in the Nation's international payments position. It does not prescribe an exclusive evidentiary route to that state of affairs. A statutory condition is not identical to any one accounting convention used to observe it, and a proclamation may rest on several indicators in combination: current account position, net international investment position, capital flows, exchange-market conditions, reserve movements, and the balances on primary and secondary income. Proclamation No. 11012 ¶¶ 6, 7, 9, 10, 13.

The consequence of the contrary reading is that a substantive standard becomes an evidentiary code. Congress enacted what must exist. The judgment below dictates the exclusive form in which existence may be shown — and then holds that the required form is one the Executive Branch no longer publishes. Nothing in the text supports converting a durable economic term into a citation to a discontinued table.

The judgment also confuses labels with economic substance. A statistical series may be renamed, reorganized, decomposed, or absorbed into newer accounts while the underlying economic relationships it measured remain observable and published. Whether current statistical products capture the condition the 1974 measures captured is a question the court foreclosed rather than answered — and

17

foreclosed without notice or technical briefing. Congress legislates legal standards; statistical agencies measure economic conditions and may revise nomenclature, methodology, and presentation as statistical science develops. Such developments may inform the application of a statute; they cannot repeal it.

Disposition. The enacted phrase governs, it is not limited to the labels appearing in a 1974 committee print, and the Court need not decide whether any particular contemporary measure establishes the statutory condition on this record.

## VI. "Large and serious" commits evaluative judgment to the Executive.

Section 2132(a) proceeds in three stages, and the judgment below collapses them. The first asks whether the economic condition exists. The second asks whether that condition is "large and serious." The third asks what temporary response the condition warrants — a surcharge, quotas, or both, within the fifteen-percent ceiling and the one-hundred-fifty-day limit. A disagreement about how to measure the condition at stage one does not authorize a court to resolve stages two and three, both of which Congress committed to the Executive.

The adjectives Congress chose are evaluative. Whether a deficit is "large and serious" depends on scale, duration, composition, trajectory, and international context. Those are not self-executing numerical thresholds retrievable from a single table. The majority acknowledged as much, holding that the question "is a discretionary determination within the province of the Executive Branch, review of

18

which by the judiciary is impermissible." *Dalton v. Specter*, 511 U.S. 462, 477 (1994).

The operative question on review is therefore whether the proclamation invoked and acted under an authorized statutory condition — not whether it contained the economic exposition a reviewing court would have written. Amicus does not contend that presidential action is immune from statutory review. He contends that the form of review must match the instrument. A court may ask whether the condition Congress specified was invoked. It may not require a proclamation to satisfy an explanatory standard drawn from the review of agency adjudication.

Nor should presidential findings be read one sentence at a time. Proclamation No. 11012 sets out findings concerning the trade deficit, the current account, the net international investment position, transfer payments, and the balances on primary and secondary income, and it characterizes the resulting payments position as large and serious by any reasonable measure of that term. Read as a whole, those findings identify the condition Congress made relevant. Absent an express statutory command, statutory compliance does not turn on incantation. Congress did not direct that a proclamation under § 2132 employ any particular verbal formula, cite any particular series, or attach any particular table. Where the findings, read together, identify the condition, substance controls over recitation.

Disposition. A proclamation that sufficiently identifies the statutory condition need not recite a formula or statistical series the statute does not prescribe, and the Court need not review the President's underlying economic judgment, which *Dalton* places outside judicial review.

## VII. Section 122 is not IEEPA.

The judgment below and the briefing surrounding it invoke *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026). That decision construed a different statute, enacted by a different Congress, in a different Act, for a different purpose, and placed by Congress in a different Title of the United States Code. The distinction is structural, and it appears on the face of the enactments themselves.

A. Congress placed the two authorities in different statutes and different Titles. Section 122 is section 122 of the Trade Act of 1974, Pub. L. No. 93-618, title I, 88 Stat. 1987, codified at 19 U.S.C. § 2132 in Title 19, captioned "Customs Duties," chapter 12, "Trade Act of 1974," subchapter I, "Negotiating and Other Authority." The International Emergency Economic Powers Act is title II of Pub. L. No. 95-223, 91 Stat. 1626, enacted nearly three years later, codified at 50 U.S.C. § 1701 et seq. in Title 50, captioned "War and National Defense," chapter 35, "International Emergency Economic Powers."

Two separate enactments. Two separate Congresses. Two separate Titles of the Code, one devoted to customs duties and one devoted to war and national

defense. Whatever *Learning Resources* held about whether an emergency statute in Title 50 contains an unstated power to lay tariffs, it did not and could not hold anything about the meaning of an express tariff authority Congress placed among the customs laws.

B. The dispositive textual difference is that Section 122 names the instrument. The question in *Learning Resources* was whether authority to regulate importation silently encompassed the tariff power. Section 122 raises no such question. It directs the President to proclaim "a temporary import surcharge, not to exceed 15 percent ad valorem, in the form of duties (in addition to those already imposed, if any) on articles imported into the United States." 19 U.S.C. § 2132(a)(A). Congress named the instrument, named the ceiling, named the alternatives — quotas, or both — and named the duration.

The two cases therefore present opposite interpretive problems. *Learning Resources* asked whether a tariff power may be inferred from statutory silence. This case asks how to construe a tariff power Congress wrote expressly, subject to an express predicate, an express rate ceiling, and an express one-hundred-fifty-day limit. A holding that emergency powers do not silently include tariffs says nothing about a customs statute that says "duties" in its operative text.

C. The remaining features run in the same direction. IEEPA is triggered by a declared national emergency arising from an unusual and extraordinary threat with a

21

source outside the United States. Section 122 is triggered by fundamental international payments problems requiring special import measures — a large and serious balance-of-payments deficit, an imminent and significant depreciation of the dollar, or cooperation with other countries in correcting an international payments disequilibrium. 19 U.S.C. § 2132(a)(1)–(3). IEEPA operates through the regulation of transactions and property interests. Section 122 operates through a surcharge and quotas. IEEPA contains no rate ceiling. Section 122 caps the surcharge at fifteen percent. IEEPA authorities persist with the emergency. Section 122 expires in one hundred fifty days absent an Act of Congress.

Amicus notes the placement of these authorities not as a canon of construction standing alone, but because it confirms what the operative text already shows. Congress legislates tariffs in the customs laws and emergency economic powers in the national-security laws. It did both here, in different decades, in different Acts, using different words. A decision construing one is not authority on the construction of the other.

Disposition. *Learning Resources* does not control the construction of Section 122, and the Court need not revisit that decision or address the scope of IEEPA.

## VIII. The Court should decide the Section 122 question and no more.

This is the point on which amicus can assist the Court and the parties cannot.

A. Section 122 and Section 301 are different statutes with different architecture. Section 122 is a temporary balance-of-payments authority. It is exercised by the President through proclamation, it is capped by rate, it expires after 150 days, and it addresses international payments conditions. 19 U.S.C. § 2132.

The limitations Congress wrote into Section 122 confirm the grant rather than qualify it. Section 2132(a) directs the President to proclaim "a temporary import surcharge, not to exceed 15 percent ad valorem, in the form of duties (in addition to those already imposed, if any) on articles imported into the United States," or quotas, or both. 19 U.S.C. § 2132(a)(A)–(C). Congress deliberately selected a customs instrument rather than a generic fiscal one — a point that holds whatever the relationship between the broad category of taxation and the specific category of duties. And Congress supplied the limiting principles the majority thought absent: three enumerated triggers, a fifteen-percent ceiling, a one-hundred-fifty-day duration absent further Act of Congress, a specified menu of instruments, mandatory consultation under § 2132(b), and continuing authority to suspend, modify, or terminate at any time under § 2132(d). A delegation bounded by trigger, instrument, rate, duration, and congressional control does not require a narrowing construction to survive. A statute that caps a power states the power.

Section 301 sits in a different title, which Congress captioned "Relief From Unfair Trade Practices," and runs from § 301 through § 310. It addresses acts,

23

policies, or practices of foreign governments that are unreasonable or discriminatory and that burden or restrict United States commerce. It requires an investigation, § 2412; consultation with the foreign government, § 2413; a formal determination and publication of its factual basis, § 2414; continuing monitoring, § 2416; and modification or termination as circumstances change, § 2417. It is administered by the Trade Representative, to whom Congress transferred implementation authority in 1988. Pub. L. No. 100-418, § 1301(a), 102 Stat. 1107.

Most relevant here, Section 301 does what Section 122 and the statute at issue in *Learning Resources* do not: it names the instrument. Section 2411(c)(1)(B) authorizes the Trade Representative to "impose duties or other import restrictions on the goods of . . . such foreign country for such time as the Trade Representative determines appropriate." And § 2411(c)(3) authorizes such action "against any goods or economic sector — (A) on a nondiscriminatory basis or solely against the foreign country described in such subsection, and (B) without regard to whether or not such goods or economic sector were involved in the act, policy, or practice that is the subject of such action."

This Court construed that statute eleven months ago and sustained the action taken under it. *HMTX Industries LLC v. United States*, 156 F.4th 1236 (Fed. Cir. 2025). It held that discretionary Section 301 actions are not subject to a proportionality requirement or any other express limit on the scale of their impact,

24

and it applied the rule that a statute "favor[s] the government's broader view" where it "simply does not contain the narrowing limitation the [appellants] read into it." *Solar Energy Industries Ass'n v. United States*, 86 F.4th 885, 895 (Fed. Cir. 2023).

B. The collision is concrete, not hypothetical. On March 17, 2026, the Trade Representative initiated Section 301 investigations of sixty economies. 91 Fed. Reg. 12,884; 91 Fed. Reg. 12,886. Determinations and proposed action issued June 5, 2026. 91 Fed. Reg. 34,272. Final action issued July 23, 2026. On July 24, 2026 — the day the Section 122 surcharge lapsed — appellee Burlap and Barrel, Inc. filed suit in the Court of International Trade challenging that action, and a second group of importers filed a companion case the same day. *Burlap and Barrel, Inc. v. Greer*, Ct. No. 26-03345; *Learning Resources, Inc. v. United States*, Ct. No. 26-03347.

Amicus offers these facts for the limited purpose of showing what a broad holding would reach. They appear in the Federal Register and are subject to judicial notice. 44 U.S.C. § 1507. Amicus does not ask the Court to consider anything from the Section 301 administrative record, which is not before it and which bears on no question in this appeal.

C. An appellee here is a plaintiff there. Burlap and Barrel, Inc. appears on both sides of that line. Language written in this opinion about the scope of delegated tariff authority, the significance of a statute's silence, or the limits of Executive discretion in trade will be quoted in a brief filed in the trial court within weeks. Neither party to

25

this appeal has an incentive to say so; each would prefer a holding as broad as its own position permits. Amicus respectfully submits that the Court should confine its reasoning to Section 122, and should say expressly that it does so.

Disposition. The Court should decide the Section 122 question presented and should state that its holding does not reach authority exercised under Section 301 or any other trade statute.

## IX. The importer appellees do not speak for all American small business.

The importer appellees present themselves as small businesses harmed by import duties. Amicus does not question their size or their good faith. He questions the inference that importer interests and small-business interests are the same thing.

They are not. A domestic manufacturer that bears lawful labor costs, traceability costs, export-control compliance costs, and federal-procurement compliance costs occupies the opposite position from an importer of foreign-produced goods. The HUBZone program exists because Congress determined that industrial capacity in historically underutilized areas is a federal interest. Amicus is affiliated with such a concern, which participated in a separate federal proceeding in support of trade measures of the general kind at issue here.

The point bears on scope rather than merits. Where an opinion's public-interest reasoning treats importer cost as a proxy for small-business interest, it adopts a premise that is contested and that no party in this appeal is positioned to contest.

26

The judgment below is instructive on this score: the trial court declined to enter universal relief and enjoined the Proclamation only "with respect to The State of Washington (and its Instrumentalities), Burlap and Barrel, Inc., and Basic Fun, Inc." That limitation was correct and should be preserved on review.

Disposition. Whatever relief survives review should remain limited to the named plaintiffs.

## X. The lapse of the surcharge does not permit leaving the construction below in place.

The surcharge imposed by Proclamation No. 11012 expired on July 24, 2026 by operation of the 150-day limit in § 2132(a). What remains live is the refund entitlement of the named importer appellees under a judgment this Court stayed on June 11, 2026.

That narrowing counsels a narrow disposition. It does not counsel declining to correct the construction. A statutory authority capped at 150 days will always expire before appellate review can be completed, which is the paradigm of a controversy capable of repetition yet evading review. *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 170 (2016). If the construction below is left standing because the surcharge lapsed, it will govern every future exercise of § 2132 without ever having been reviewed — and, as Part I explains, it was adopted without the adversarial testing the trial court's own rules require.

27

Disposition. The narrowed controversy warrants a narrow disposition, not the preservation of an unreviewed rule of decision.

## CONCLUSION

Amicus respectfully submits that the judgment should be vacated on the narrowest available ground — the failure to afford the notice and opportunity to respond that USCIT Rule 56(f) requires before adopting a construction no party advocated — and the case remanded for the briefing that rule contemplates. Vacatur and remand is the disposition that matches the defect: it removes a construction reached without adversarial testing without itself resolving the construction. It requires the Court to endorse neither party's economic definition, and it leaves the merits where they belong, with the parties, on remand, after briefing. Only if the Court reaches the construction need it correct a reading that permits a statistical agency to render a statute inoperable and that subjects a Presidential proclamation to review the Supreme Court has forbidden. This Court need not determine the ultimate meaning of every provision of the Trade Act to resolve this appeal. It need only require that a dispositive statutory construction be reached through the process USCIT Rule 56(f)(2) prescribes, and preserve the separate authorities Congress enacted for separate purposes and placed in separate Titles of the Code. Amicus asks that the Court not leave in place, unreviewed, a rule of decision that no party proposed and no party had the chance to answer.

28

In either event, amicus respectfully asks the Court to confine its holding to Section 122 of the Trade Act of 1974, and to state that it does so. A different statute, expressly conferring authority to impose duties on a different officer under different predicates, is being litigated in the trial court on a record this Court has not seen. If the Court writes on the scope of its holding, amicus respectfully suggests a single sentence, which costs the Court nothing and prevents a great deal:

"Our holding concerns only 19 U.S.C. § 2132 and does not address authority exercised under 19 U.S.C. § 2411 or any other trade statute."

Amicus respectfully requests the following relief, in descending order of preference. First, vacate the judgment and the permanent injunction and remand for the notice and briefing USCIT Rule 56(f)(2) requires. Second, and only if the Court reaches the construction, reverse the holding that Section 2132(a)(1) is confined to the liquidity, official-settlements, and basic-balance measures, and hold that the statute is not limited to statistical series the Executive Branch no longer publishes. Third, preserve the limitation of relief to the named plaintiffs. Fourth, confine the holding to Section 122 and state that it does not reach Section 301. Fifth, maintain the stay entered June 11, 2026 through issuance of the mandate, so that the judgment below does not produce irreversible financial consequences before appellate review concludes.

Dated: July 28, 2026

Respectfully submitted,

/s/ James H. Poole
JAMES H. POOLE
Amicus Curiae in His Individual Capacity

875 Helicopter Road
Thomasville, Georgia 31757

Telephone: 229-201-1673
Email: savetheamericancommunities@gmail.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 6,742 words, which does not exceed 7,000 words, one-half of the 14,000-word maximum authorized for a party's principal brief by Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b)(1).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, Times New Roman, in 14-point type.

Dated: July 28, 2026

/s/ James H. Poole
JAMES H. POOLE
Amicus Curiae in His Individual Capacity

## CERTIFICATE OF SERVICE

I certify that on July 28, 2026, I filed the foregoing through the Court's CM/ECF system, which transmitted notice of the filing to all registered counsel of record.

Dated: July 28, 2026

/s/ James H. Poole
JAMES H. POOLE
Amicus Curiae in His Individual Capacity

31